## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| RODERICK ROBERTSON and<br>LETITIA ROBERTSON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 2:14-cv-02677-SHM-cgc |
| US BANK, N.A. AS TRUSTEE FOR RESIDENTIAL | ) | |
| ASSETS SECURITIES CORPORATION, HOME | ) | **ORAL ARGUMENT** |
| EQUITY MORTGAGE ASSET-BACKED PASS | ) | **REQUESTED** |
| THROUGH CERTIFICATES, SERIES 2006-EMX3, | ) | |
| WILSON & ASSOCIATES, PLLC, and | ) | |
| RESIDENTIAL ASSETS SECURITIES | ) | |
| CORPORATION, HOME EQUITY MORTGAGE | ) | |
| ASSET-BACKED PASS THROUGH | ) | |
| CERTIFICATES, SERIES 2006-EMX3 | ) | |
| | ) | |
| Defendants | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendants U.S. Bank, N.A., as trustee for RASC Series 2006-EMX3 Trust ("U.S. Bank"), and the RASC Series 2006-EMX3 Trust ("the RASC Trust") (collectively, "Defendants"), submit their Memorandum of Law in support of Motion for Summary Judgment of Plaintiffs' Verified First Amended Complaint ("Amended Complaint") as follows:

### INTRODUCTION

Plaintiffs Roderick and Letitia Robertson defaulted on their mortgage obligation, and are currently due for their August 2011 payment.  Nevertheless, they brought suit to avoid a foreclosure sale concerning the property located at 5255 Lodestone Loop, Memphis, Tennessee 38109.  In their Amended Complaint, the Robertsons raise several claims, none of which raises a genuine issue of material fact for trial.  First, they assert that Defendants lack standing to pursue

foreclosure.  The undisputed material facts show that the original Note was endorsed to U.S. Bank, as trustee, and counsel for Defendants is in possession of the original Note.  Second, the Robertsons assert breach of the Truth in Lending Act (TILA) related to the assignment of their mortgage loan and seek to rescind the mortgage loan nine years after executing it.  This claim fails to raise a genuine issue because the TILA statute does not pertain to the Robertsons' claim and because the claim is time-barred by TILA's three year statute of repose.  Third, the Robertsons make conclusory allegations of fraudulent inducement that do not pertain to Defendants.  Fourth, to the extent the Robertsons allege violation of a pooling and servicing agreement, they lack standing to do so.

## FACTS

On December 23, 2005, Roderick and Letitia Robertson executed a Note and Deed of Trust for $192,000 and secured the financing with the residential property located at 5255 Lodestone Loop, Memphis, Tennessee 38109.  (Statement of Undisputed Material Fact ("SOF"), ¶ 1), attached as Exhibit 1 to this Memorandum).  The Note that they executed states that the "Lender is Mortgage Lenders Network USA, Inc."  (SOF ¶ 2).  The Note goes on to state, however, that "I understand that Lender may transfer this Note.  Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder'."  (*Id.*).

The Deed of Trust that the Robertsons executed also states that the lender is Mortgage Lenders Network USA, Inc., but that the beneficiary under the Deed of Trust is Mortgage Electronic Registration Systems, Inc. ("MERS"), acting solely as nominee for the lender's and the lender's successors and assigns.  (SOF ¶ 3).  The Deed of Trust, under section 20 entitled "Sale of Note; Change of Loan Servicer; Notice of Grievance," states in pertinent part that "The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or

2

more times without prior notice to Borrower.  A sale may result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law."  (SOF ¶ 4).

Pursuant to the language in the mortgage documents, the Note was transferred and eventually endorsed to "U.S. Bank National Association as Trustee." (SOF ¶ 5).  Likewise, an Assignment of Mortgage was executed from MERS to "U.S. Bank, National Association, as Trustee for RASC 2006-EMX3."  (SOF ¶ 6).  And critically, *counsel for Defendants is in possession of the original Note executed by the Robertsons*.  (SOF ¶ 13).

The Deed of Trust also contemplates that servicing of the mortgage loan may be transferred, stating in pertinent part that "There also might be one or more changes of the Loan Servicer unrelated to the sale of the Note.  If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing."  (SOF ¶ 7).  In accordance, Wells Fargo sent notice to the Robertsons that it would begin servicing the mortgage loan effective March 1, 2007.  (SOF ¶ 8).  Wells Fargo services the Robertsons' mortgage loan on behalf of Defendants U.S. Bank and the RASC Trust.  (*Id.*).

The Robertsons eventually defaulted on their mortgage obligation and, as of May 26, 2015, they are due for their August 2011 mortgage payment. (SOF ¶ 9).  A foreclosure sale was scheduled for August 8, 2014.  (SOF ¶ 11).  On or around July 9, 2014, counsel for the Robertsons sent a "Notice of Rescission" to Wells Fargo.  (SOF ¶ 10).  Although the Robertsons had not made a mortgage payment in years, they filed suit the day before the foreclosure sale, on August 7, 2014, in order to stop foreclosure.  (SOF ¶ 12).

M KGS 2616259 v3
2780973-002276  05/29/2015

# ARGUMENT

## 1.   Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The court is to construe the evidence and all inferences to be drawn from it in the light most favorable to the nonmoving party. *Id.* at 255. The party seeking summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A dispute about a material fact is "genuine" within the meaning of Rule 56 only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 252. Because the preponderance of the evidence standard is used in this determination, more than a mere scintilla of evidence in support of the non-moving party's position is required. *Id.* at 252.

Once the moving party demonstrates that the non-moving party has no evidence such that a reasonable jury could support a verdict in its favor, the non-moving party must put forth specific facts that demonstrate a genuine factual issue for trial. *See Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 398 (6th Cir. 2007). The non-moving party may not merely rest on conclusory allegations contained in the complaint, but must respond with affirmative evidence supporting its claims and establishing the existence of a genuine issue of material fact. *Celotex*, 477 U.S. at 324.

M KGS 2616259 v3
2780973-002276  05/29/2015

**2.      None of the claims raises a genuine issue of material fact for trial.**

The Robertsons assert various claims and arguments against the Defendants that do not raise a genuine issue for trial.  In fact, some do not meet federal pleading standards.  Summary judgment is due to be granted for all claims, which are set out in Counts I-IV and VIII-XI.[1]

> **a.      Plaintiffs' arguments in Counts I-IV related to lack of standing do not raise a genuine issue for trial.**

Counts I-IV contain disjointed statements related to Defendants' purported lack of standing under the Note and Deed of Trust to pursue the remedy of foreclosure.[2]  Specifically, the Robertsons allege that "all actions of US Bank, N.A. as Trustee and its privies are void as these entities lack landing [sic] and have no ownership or title to the debt, obligations, or promissory notes in question due [to] breaks in the chain of endorsement or lack of effective endorsement."  (Amended Complaint, ¶ 25; *see also* ¶¶ 28, 32, 34).  The Robertsons' assertions about lack of standing are without merit and do not raise a genuine issue for trial.

> **1.      Counsel for Defendants possesses the original Note that contains an endorsement to Defendant U.S. Bank, as trustee.**

The Robertsons allege that the Note was not properly endorsed to "U.S. Bank National Association, as Trustee" by Residential Funding Corporation because of purported testimony - in some unknown previous case - by Judy Faber, an alleged employee of Residential Funding

---

[1]   The remaining Counts V-VII pertain to requests for injunctive relief and do not contain any substantive allegations or causes of actions.  (*See* Amended Complaint, ¶¶ 38-43).

[2]   Parenthetically, the majority of Counts I and II appear to be directed at foreclosure counsel Wilson & Associates.  (*See, e.g.*, Amended Complaint, ¶¶ 25-26, 28-30).  Wilson & Associates has been voluntarily dismissed from this lawsuit.  (*See* Dkt. #21, Order Dismissing Wilson & Associates).  Therefore, all allegations directed at foreclosure counsel - including allegations related to correspondence sent by Wilson & Associates and notice of appointment of substitute trustee handled by Wilson & Associates - should be dismissed.

Corporation, which allegedly relates to endorsements of Notes.  (Amended Complaint, ¶ 14; *see also* Exhibit H to the Amended Complaint).  Plaintiffs' argument is not supported by the facts in this case as well as Tennessee statutory and case law.

First, the reliance on this alleged testimony from Ms. Faber is insufficient to prove anything, especially when it is undisputed that U.S. Bank possesses the original Note.  Obviously this citation to a deposition transcript from an unknown case is hearsay.  In fact, it is hearsay within hearsay, and thus is not admissible evidence.[3]  Further, there are foundational issues which preclude evidentiary  consideration of this testimony, including whether this testimony even applies to the Plaintiffs' Note.

Second, and most important, counsel for Defendants possesses the original Note.  (SOF ¶13).  This is undisputed.  It is also important because the Note contains an acknowledgement by the Robertsons that "I understand that Lender may transfer this Note.  Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder'."  (SOF ¶ 2).  Pursuant to that language in the Note, the Note was transferred several times, and the Allonge to the Note contains a final endorsement to "U.S. Bank National Association, as Trustee."  (SOF ¶ 5).  Assuming *arguendo* that the endorsement to "U.S. Bank National Association, as Trustee" is somehow deficient, U.S. Bank, as trustee, still has standing to enforce the Note because Tennessee statute allows a person to enforce a Note because it has possession - even if it is in "wrongful possession" of the instrument.

Specifically, Tenn. Code Ann. §47-3-301, entitled "Person entitled to enforce instrument," states that " 'Person entitled to enforce' an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii)

---

[3]    The Robertsons elected not to depose Judy Faber in this case.

M KGS 2616259 v3
2780973-002276  05/29/2015

a person not in possession of the instrument who is entitled to enforce the instrument pursuant to § 47-3-309 or § 47-3-418(d)." Tenn. Code Ann. §47-3-301; *see also* §47-3-302 regarding statutory definitions of "holder in due course." Moreover, Tenn. Code Ann. §47-3-301 goes on to state that "A person may be entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument." *Id.* [4] *See, e.g., Donaldson v. BAC Home Loans Servicing, L.P.*, 813 F.Supp.2d 885, 896 (M.D. Tenn. 2011) (although §47-3-301 was not specifically at issue in that case, the court's ruling is applicable: "Thus, even if Defendant is not the technical owner of the Note because there was not a valid endorsement, either on the face of the Note or through a valid allonge, Defendant would have the right to enforce the instrument as long as Countrywide, its predecessor-in-interest, obtained the Note through a valid transfer. . . . Defendant has produced copies of the Note and Allonge, including a color copy with blue-inked signatures, and Declarations from an employee and its counsel stating that it is in possession of the original documents and that the filed documents are true and correct copies.").

In sum, because U.S. Bank, as trustee, has possession of the original Note which was endorsed to it, U.S. Bank, as trustee, has standing to enforce the Note.

### 2. The Deed of Trust was validly assigned from MERS to US Bank, as trustee.

The Robertsons also attempt to show lack of standing to pursue foreclosure by arguing that the Assignment of Mortgage from MERS to U.S. Bank, as trustee, is defective. Their arguments fail to raise a genuine issue. First, their Argument fails to raise a genuine issue because of well-established case law that the Mortgage follows the Note. "It is well-settled

---

[4] To be clear, there is *no* evidence in the record that U.S. Bank, as trustee, is in wrongful possession of the Note.

under Tennessee law that the transfer of a note automatically carries with it the lien created by the accompanying deed of trust or other instrument securing it." *Dauenhauer v. Bank of New York Mellon*, 562 Fed.Appx. 473, 469 (6th Cir. Apr. 15, 2015).   Thus, issues involving an assignment of mortgage do not prevent the note holder from exercising its rights.   *See, e.g.*, *Musselman v. Deutsche Bank Trust Company Americas (In re Balderrama)*, 451 B.R. 185, 190 (M.D. Fla. 2011) ("Proof of a creditor's status as holder of a note underlying a mortgage is proof of purchase of the debt, and the previous ownership history of the note and mortgage is irrelevant."); *U.S. Bank Nat'l Association v. McConnell*, 305 P.3d 1, 8 (Kan. Ct. App. 2013) (holding that issues with assignment of the Mortgage did not affect the Bank's standing to pursue the foreclosure because the Bank held the promissory Note); *In re Ivy Properties*, 109 B.R. 10, 12-14 (Bankr. D. Mass. 1989) (not necessary to record a separate mortgage assignment when holder is in possession of the Note).   Therefore, because the Note was endorsed to US Bank, as trustee, and because counsel for U.S. Bank has possession of the original Note, the Deed of Trust automatically follows.

Second, the Assignment of Mortgage executed from MERS to US Bank, as trustee, is consistent with the language in the Deed of Trust and consistent with Tennessee case law.  (SOF ¶6).  The Deed of Trust at section 20 entitled "Sale of Note; Change of Loan Servicer; Notice of Grievance" states in pertinent part that "The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.  A sale may result in a change in the entity (known as the 'Loan Servicer') that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law."  (SOF ¶ 4). Under the Robertsons' Deed of Trust, the lender was Mortgage Lenders Network USA, Inc., but the beneficiary was MERS, acting solely as nominee for the lender's and the lender's successors

and assigns.  (SOF ¶ 3).  Pursuant to MERS' authority under the Deed of Trust, in July 2012 an Assignment of Mortgage was executed from MERS to "U.S. Bank, National Association, as Trustee for RASC 2006-EMX3."  (SOF ¶ 6).  The execution of such an Assignment is consistent with, and indeed contemplated by, the language in the Deed of Trust, and has been recognized by rulings from Tennessee courts.

Under the same facts and language as the Deed of Trust in this case, federal district courts have recognized MERS' authority to assign a Deed of Trust.  *See Dauenhauer v. Bank of New York Mellon*, 562 Fed.Appx. 473, 479 (6th Cir. Apr. 15, 2015) ("Courts have held that this identical language grants MERS the authority to act as the agent of any valid note holder, including assigning a deed of trust..."), *aff'g. Dauenhauer v. Bank of New York Mellon*, 2013 WL 2359602, at *3 (M.D. Tenn. May 28, 2013); *Samples v. Bank of America*, 2012 WL 1309135 (E.D. Tenn. Apr. 16, 2012) (where the deed of trust named MERS as the beneficiary and nominee of the lender and its assigns, claims based on invalid assignment by MERS or claims that challenged the role of MERS failed as a matter of law).

Third, even if the mortgage does not follow the note, which obviously it does, the Robertsons try to show that the Assignment of Mortgage is defective by referencing two other assignments pertaining to this residential property, but neither assignment raises a genuine issue to support their argument that the Assignment is defective and therefore that U.S. Bank, as trustee, lacks standing to enforce the Deed of Trust.  (*See* Amended Complaint, ¶¶ 12, 15, 16; *see also* Exhibits F and I to Amended Complaint).  The assignment referenced in paragraph 15 of the Amended Complaint and attached as Exhibit I to the Amended Complaint pertains to a different deed of trust than in this litigation and for a mortgage loan of $48,000.  (Amended Complaint, ¶ 15; Exhibit I to Amended Complaint).  It has nothing to do with the mortgage loan for $192,000 that the Robertsons executed.  (*Id.*).  The assignment referenced in paragraph 12 and as Exhibit

9

F dated from 2009 was an assignment from MERS to Wells Fargo, which is the servicer for the Robertsons' mortgage loan.  (SOF ¶ 8).  In other words, the 2009 assignment is not to an unrelated entity that might attempt to enforce the provisions of the Deed of Trust in conflict with U.S. Bank, as trustee.  Instead, that earlier assignment was made to Wells Fargo, which as the servicer of the loan in question, can foreclose on behalf of the note holder.  *See, e.g., Pugh*, 2013 WL 3349649 at *19 ("Courts in this circuit have concluded that substitute trustees (or loan servicers) can be authorized to pursue foreclosure proceedings as agents for secured creditors.")

In sum, Defendant U.S. Bank, as trustee, has standing to enforce the provisions of the Note and Deed of Trust, including exercising the remedy of foreclosure.  The Robertsons' statements and allegations in Counts I, II, III, and IV fail to raise a genuine issue of material fact for trial and must be dismissed.

### b.    Plaintiffs' rescission arguments in Counts VIII-XI fail to raise a genuine issue for trial.

The Robertsons allege that they did not know that the Deed of Trust had been assigned to U.S. Bank, as trustee (Amended Complaint, ¶ 16), and that "Due to the actions of the Bank in failing to transmit the material information required regarding US Bank within the time limits established by §1641(g) and §223.39, Plaintiff exercised their right to rescind the loan pursuant to 15 USC §1635 and 15 USC §1641(g) and filed a Notice of Rescission in the Real Estate Records on August 7, 2014."  (Amended Complaint, ¶ 47; *see also* ¶¶ 51, 53).  Codified in 15 U.S.C. § 1601, the Truth in Lending Act (TILA) imposes a series of disclosure requirements on creditors, while at the same time affording consumers certain rights in case creditors fail to provide them with requisite disclosures. The Robertsons seek to rescind their mortgage loan using §1635, but this request fails as a matter of law for at least two reasons.

M KGS 2616259 v3
2780973-002276  05/29/2015

First, while the pleading in the Amended Complaint is disjointed and disorganized, it appears that the Robertsons wish to rescind their mortgage loan because they did not receive notice that their Deed of Trust had been assigned to U.S. Bank.   (Amended Complaint, ¶¶ 16, 47).   They fail to raise a genuine issue regarding their TILA claim because a mortgage assignment is not a "consumer credit transaction."  The TILA section pertaining to the right of rescission at 15 U.S.C. §1635(a) applies to "the case of any consumer credit transaction . . . ." An assignment of a mortgage loan is not a consumer credit transaction.  In fact, the consumer is not even a party to an assignment of a mortgage loan.  The Robertsons do not cite to any case law to support their argument that an assignment of their mortgage can form the basis for seeking rescission, and Defendants are not aware of any case law that supports their argument either. Simply put, TILA's right of rescission does not apply to assignments based on the plain language of the statute.

Second, even if the TILA right to rescission applied in this case, which it does not, the Robertsons' attempt to rescind the mortgage transaction nine years after they entered into the mortgage loan is time-barred by TILA's three year statute of repose.  Under TILA, a borrower "shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later. . ." 15 U.S.C. §1635(a).  The right to rescind can extend beyond 3 days if required TILA notices and forms are not provided at or shortly after the transaction date - but the right to rescind does not continue indefinitely.  15 U.S.C. §1635(f) entitled "Time limit for exercise of right" states in part that "An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required

11

under this section or any other disclosures required under this part have not been delivered to the obligor. . ."15 U.S.C. §1635(f).

TILA's three year deadline is not a statute of limitation that can be extended by a particular jurisdiction's saving statute, for example. Instead, TILA's three year deadline is a strict statute of repose. *Beach v. Ocwen Federal Bank*, 523 U.S. 410, 416 (1998) (Supreme Court found 3 year deadline in section 1635(f) was not statute of limitation but statute of repose, "operat[ing], with the lapse of time, to extinguish the right which is the foundation for the claim.").

In this case, the Robertsons refinanced their original mortgage loan in 2005 by executing a new Note and Deed of Trust.  (SOF ¶ 1).   Yet the "Notice of Rescission" sent to Wells Fargo is dated July 9, 2014, nine years later.   (SOF ¶ 10; *see also* Amended Complaint, ¶ 22 and Exhibit R to the Amended Complaint, pertaining to the Notice of Rescission that was filed with the Shelby County Register of Deed's on August 7, 2014).   In short, the right to rescind the mortgage loan under TILA has long since expired.[5]

      **c.**     **Plaintiffs fail to raise a genuine issue regarding fraudulent inducement in Count VIII.**

In Count VIII, the Robertsons make the single, disjointed allegation that the "actions of Bank as purported assignee in the shoes of Mortgage Lending Network in fraudulently inducing Plaintiffs to enter into the refinance transaction entitle them [to] rescind the loan, obtain a return a payments."  (Amended Complaint, ¶ 45; *see also* ¶ 7.1).  First, Defendants did not originate the

---

[5]   Any attempt by the Robertsons to argue that the three year statute of limitations should be calculated from the date of the Assignment of Mortgage is wholly without merit.  The Robertsons presumably desire to rescind the mortgage loan, not the Assignment, because rescinding the Assignment would accomplish nothing.  Assuming for a moment that the Robertsons had standing to rescind the Assignment, they would still be obligated to pay their indebtedness if the Assignment was rescinded.  In this suit, it appears they are trying to achieve the opposite - evading their debt obligation entirely.

M KGS 2616259 v3
2780973-002276  05/29/2015

Robertsons' mortgage loan, and therefore there is no factual or legal basis for asserting "fraudulent inducement" against Defendants.  Second, the Robertsons cannot show any damages because they obtained the benefit of being able to refinance their existing mortgage loan. (Amended Complaint, ¶ 7).  Finally, there are no allegations to support any fraud claim, and therefore, this claim fails due to lack of particularity as required by Rule 9(b).  This claim is due to be dismissed.

### d.  Plaintiffs lack standing to challenge pooling and servicing agreement.

The Amended Complaint's disjointed pleading makes it difficult to ascertain whether the Robertsons are trying to assert any claim based on a pooling and servicing agreement, and if so, what paragraphs pertain to such a claim.  (*See, e.g.,* Amended Complaint, pp. 3-4; *see also* Exhibit B to Amended Complaint).  The Robertsons fail to raise any genuine issue for trial, however, because they do not have standing to assert allegations pertaining to a pooling and servicing agreement to which they are not a party.  *See, e.g., Robinson v. Select Portfolio Servicing, Inc.*, 2013 WL 1405201, *3-4 (6th Cir. Apr. 9, 2013) (plaintiffs/mortgagors lacked standing to allege unfair practices against RMBS trustee - based upon a theory that their mortgage was allegedly added to the RMBS trust after the closing date specified in PSA - because they were not parties to, or third-party beneficiaries of, the assignment or PSA).  Courts have also explained that a borrower is not an intended third party beneficiary to a pooling and servicing agreement because securitization is a distinct contract than the mortgage contract.  *See, e.g., Thompson v. Bank of America*, 2014 WL 6844931 at *4 (6th Cir. Dec. 5, 2014) ("Securitization is a separate contract, distinct from the borrower's debt obligation under the note.").  Any allegations related to the pooling and servicing agreement should be dismissed.

M KGS 2616259 v3
2780973-002276  05/29/2015

2.     **Defendant RASC Trust should be dismissed for the Robertsons' failure to effect service.**

Any claims and allegations against the RASC Trust should be dismissed pursuant to Rule 4 for failure to issue a summons despite repeated notice that there was no service on the Trust. Federal Rule of Civil Procedure 4(b) states in part that "A summons - or a copy of a summons that is addressed to multiple defendants - must be issued for each defendant to be served." Fed. R. Civ. P. 4(b). The Rule goes on to state under "Time Limit for Service" that "If a defendant is not served within 120 days after the complaint is filed, the court - on motion or on its own after notice to the plaintiff - must dismiss the action without prejudice against the defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m).

The Verified First Amended Complaint was filed on August 8, 2014. (Dkt. #1-1, p. 16 of 108). In the "Answer Submitted by U.S. Bank and the RASC Trust" on September 6, 2014 there are two explicit statements about the lack of service. (*See* Answer at Dkt. #4). First, the introductory paragraph of the Answer begins with "without waiving any defenses, including insufficiency of process and insufficiency of service of process . . . (Dkt. #4, introductory paragraph). Second, the affirmative defenses include the defenses of insufficient process and insufficient service of process. (Dkt. #4, affirmative defenses, ¶ 6). Thereafter, in the "Rule 26 Initial Disclosures Submitted by U.S. Bank and the RASC Trust," the preliminary statement explicitly states that "Further, the RASC Trust does not waive any of its defenses, including lack of service and/or process, by providing the following Initial Disclosures." (Initial Disclosures, attached as Exhibit 2 to this Memorandum).

This case has been pending in this Court for almost a year. Despite repeated notice that "the RASC Trust" has not been served, the Robertsons did not issue a summons. The RASC Trust should be dismissed from this suit pursuant to Rule 4(m).

14

## CONCLUSION

The Robertsons fail to raise a genuine issue of material fact as to any of their claims. Additionally, the Robertsons have never attempted service on the RASC Trust. Summary judgment is due to be granted for all claims.

Respectfully submitted,

s/ Kavita G. Shelat
Bradley E. Trammell (#13980)
Kavita G. Shelat (#29388)
Baker, Donelson, Bearman, Caldwell &
Berkowitz, PC
165 Madison Avenue, Suite 2000
Memphis, TN  38103
Telephone: 901-577-8120
Fax: 901-577-0725
btrammell@bakerdonelson.com
kshelat@bakerdonelson.com

*Attorneys for Defendants U.S. Bank, N.A., as trustee for RASC Series 2006-EMX3 Trust and RASC Series 2006-EMX3 Trust*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served via this Court's ECF system and/or by email on May 29, 2015 to:

Drayton D. Berkley
119 South Main, Suite 500
Memphis, TN 38103

s/ Kavita G. Shelat

15

M KGS 2616259 v3
2780973-002276  05/29/2015

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | |
|---|---|
| RODERICK ROBERTSON and<br>LETITIA ROBERTSON,<br><br>     Plaintiffs,<br><br>v.<br><br>US BANK, N.A. AS TRUSTEE FOR RESIDENTIAL<br>ASSETS SECURITIES CORPORATION, HOME<br>EQUITY MORTGAGE ASSET-BACKED PASS<br>THROUGH CERTIFICATES, SERIES 2006-EMX3,<br>WILSON & ASSOCIATES, PLLC, and<br>RESIDENTIAL ASSETS SECURITIES<br>CORPORATION, HOME EQUITY MORTGAGE<br>ASSET-BACKED PASS THROUGH<br>CERTIFICATES, SERIES 2006-EMX3<br><br>     Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   No. 2:14-cv-02677-SHM-cgc<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

Defendants U.S. Bank, N.A., as trustee for RASC Series 2006-EMX3 Trust ("U.S. Bank"), and the RASC Series 2006-EMX3 Trust ("the RASC Trust") (collectively, "Defendants"), submit their Statement of Undisputed Material Facts in support of Motion for Summary Judgment.

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

1. On December 23, 2005, Roderick and Letitia Robertson executed a Note and Deed of Trust for $192,000 and secured the financing with the residential property located at 5255 Lodestone Loop, Memphis, Tennessee 38109. (Affidavit of Alisha Mulder, ¶ 2, which is attached as Exhibit 1; *see also* Note and Deed of Trust, attached as A to Affidavit).

2. The Note that they executed states that the "Lender is Mortgage Lenders Network USA, Inc." (*See* Note at Exhibit A to Affidavit). The Note goes on to state, however, that "I

understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder'." (*Id.*).

3. The Deed of Trust that the Robertsons executed states that the lender is Mortgage Lenders Network USA, Inc., but that the beneficiary under the Deed of Trust is Mortgage Electronic Registration Systems, Inc., acting solely as nominee for the lender's and the lender's successors and assigns. (*See* Deed of Trust, pp. 1-2, at Exhibit A to Affidavit).

4. Later in the Deed of Trust, under section 20 entitled "Sale of Note; Chance of Loan Servicer; Notice of Grievance," it states in pertinent part that "The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law." (*See* Deed of Trust, p. 12).

5. The original Note contains an endorsement to "U.S. Bank National Association as Trustee" in the Allonge. (*See* Affidavit of Alisha Mulder, ¶ 8; *see also* Note, attached as Exhibit A to Affidavit).

6. In July 2012, an Assignment of Mortgage was executed from "Mortgage Electronic Registration Systems, Inc., as nominee for Mortgage Lenders Network USA, Incorporated, its successors and assigns" to "U.S. Bank, National Association, as Trustee for RASC 2006-EMX3." (*See* Affidavit of Alisha Mulder, ¶ 6; *see also* Assignment, attached as Exhibit D to Affidavit).

7. Section 20 of the Deed of Trust goes on to state that "There also might be one or more changes of the Loan Servicer unrelated to the sale of the Note. If there is a change of the

2

Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing." (*See* Deed of Trust, p. 12, attached as Exhibit A to Affidavit).

8. Wells Fargo services the Robertsons' mortgage loan on behalf of Defendants U.S. Bank and the RASC Trust. (Affidavit of Alisha Mulder, ¶¶ 1, 4). Wells Fargo sent correspondence to the Robertsons dated February 21, 2007, informing them that effective March 1, 2007 Wells Fargo would begin servicing the mortgage loan. (Affidavit, ¶ 4; *see also* Exhibit B to Affidavit).

9. The Robertson eventually defaulted on their mortgage obligation and, as of May 26, 2015, they are due for their August 2011 mortgage payment and the total payoff is $270,668.54. (Affidavit of Alisha Mulder, ¶ 5; *see also* Exhibit C to Affidavit).

10. In 2014, counsel for the Robertsons sent a "Notice of Rescission" to Wells Fargo. (Affidavit of Alisha Mulder, ¶ 7; *see also* Exhibit E to Affidavit).

11. Foreclosure was scheduled for August 8, 2014. (Amended Complaint, ¶ 22).

12. The Robertsons filed their original Complaint on August 7, 2014. (Dkt. #1, Notice of Removal, p. 2 of 108).

13. Following the litigation, Counsel for Defendants is in possession of the original Note. (Affidavit of Alisha Mulder, ¶ 8).

3

Respectfully submitted,

s/ Kavita G. Shelat
Bradley E. Trammell (#13980)
Kavita G. Shelat (#29388)
Baker, Donelson, Bearman, Caldwell &
Berkowitz, PC
165 Madison Avenue, Suite 2000
Memphis, TN  38103
Telephone: 901-577-8120
Fax: 901-577-0725
btrammell@bakerdonelson.com
kshelat@bakerdonelson.com

*Attorneys for Defendants U.S. Bank, N.A., as
trustee for RASC Series 2006-EMX3 Trust
and RASC Series 2006-EMX3 Trust*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served via this Court's ECF system and/or by email on May 29, 2015 to:

| Drayton D. Berkley |
| 119 South Main, Suite 500 |
| Memphis, TN 38103 |

s/ Kavita G. Shelat

4

EXHIBIT

1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

RODERICK ROBERTSON and
LETITIA ROBERTSON,

    Plaintiffs,

v.

US BANK, N.A. AS TRUSTEE FOR RESIDENTIAL
ASSETS SECURITIES CORPORATION, HOME
EQUITY MORTGAGE ASSET-BACKED PASS
THROUGH CERTIFICATES, SERIES 2006-EMX3,
WILSON & ASSOCIATES, PLLC, and
RESIDENTIAL ASSETS SECURITIES
CORPORATION, HOME EQUITY MORTGAGE
ASSET-BACKED PASS THROUGH
CERTIFICATES, SERIES 2006-EMX3

    Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 2:14-cv-02677-SHM-cgc

## AFFIDAVIT OF ALISHA MULDER IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

STATE OF IOWA

COUNTY OF DALLAS

    I, Alisha Mulder, being duly sworn under oath, hereby depose and state as follows:

1.    I am a competent adult, and I am familiar with the facts and circumstances stated in this

    Affidavit.  I am an Authorized Signer of Ocwen Loan Servicing, LLC, the servicer and

    Vice President Loan Documentation of Wells Fargo Bank, N.A. d/b/a America's

    Servicing Company, the sub servicer ("Wells Fargo") and as such I am authorized to

    execute this affidavit. In such capacity, I am familiar with the manner and procedures by

    which Wells Fargo's business records are obtained, prepared, and maintained. This

    Affidavit is made on personal knowledge based upon review of the records concerning

the loan in question maintained by Wells Fargo in the course of its regularly conducted business.

2.    On or about December 23, 2005, Roderick Robertson and Letitia Robertson (the "Robertsons") executed a Note and Deed of Trust to secure financing for $192,000 with the residential property located at 5255 Lodestone Loop, Memphis, Tennessee 38109. (*See* Note and Deed of Trust, attached as Exhibit A).

3.    The Note that the Robertsons executed states that the lender is Mortgage Lenders Network USA, Inc.  The Deed of Trust also states that the lender is Mortgage Lenders Network USA, Inc., but that the beneficiary under the Deed of Trust is Mortgage Electronic Registration Systems, Inc., acting solely as nominee for the lender's and the lender's successors and assigns.

4.    In 2007, Wells Fargo sent correspondence informing the Robertsons that effective March 1, 2007, Wells Fargo would begin servicing the mortgage loan.  (Correspondence dated February 21, 2007, attached as Exhibit B).

5.    The Robertsons eventually defaulted on their mortgage obligation.  As of May 26, 2015, the Robertsons are due for their August 2011 mortgage payment and the total to pay off is $270,668.54.  (Loan information, attached as Exhibit C).

6.    In July 2012, an Assignment of Mortgage was executed "Mortgage Electronic Registration Systems, Inc., as nominee for Mortgage Lenders Network USA, Incorporated, its successors and assigns" to "U.S. Bank, National Association, as Trustee for RASC 2006-EMX3". (Assignment, attached as Exhibit D).

2

7.    In 2014, Wells Fargo received a "Notice of Rescission."  (Notice of Rescission, attached as Exhibit E).

8.    Counsel for Defendants is currently in possession of the original Note. The Allonge to the Note contains an endorsement to "U.S. Bank, National Association, as Trustee."


Further this affiant sayeth not.

*Alisha Mulder*

Alisha Mulder - Authorized Signer, Ocwen Loan Servicing, LLC
and Vice President Loan Documentation, Wells Fargo Bank, N.A.
5/27/15


State of Iowa        )
                     ) ss.
County of Dallas     )
              Signed and sworn to (or affirmed) before me on _May_  _27_, 2015
by _Alisha Mulder_ .

*Andrea Kruse*
Notary Public

ANDREA KRUSE
COMMISSION NO. 772716
MY COMMISSION EXPIRES
APRIL 28, 2018

3030052061



**EXHIBIT**

**A**

# NOTE

December 23, 2005          Memphis                          Tennessee

[Date]                          [City]                          [State]

**5255 LODESTONE LOOP      , MEMPHIS, TN 38109**

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ **192,000.00**          (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is

**MORTGAGE LENDERS NETWORK USA, INC.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **8.4900** %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st** day of each month beginning on **February 1, 2006** . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **January 1, 2036** , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **10 RESEARCH PARKWAY, WALLINGFORD, CT   06492**
or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ **1,474.96** .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**\* Except as set forth in the attached Prepayment Penalty Addendum.**

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP®-5N (0207)          **Form 3200 1/01**

VMP MORTGAGE FORMS · (800)521-7291          **MIN- 1002610-3030052061-5**

Page 1 of 3          Initials:

3030052061

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **10** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **10.0000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

~~Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class~~ mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

3030052061

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
LETITIA ROBERTSON                -Borrower
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

_____ (Seal)
RODERICK ROBERTSON              -Borrower
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

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

PAY TO THE ORDER OF:
EMAX FINANCIAL GROUP, LLC
WITHOUT RECOURSE
By: MORTGAGE LENDERS NETWORK USA, INC.

_____ (Seal)
                                -Borrower

_____ (Seal)
CHAD JONES                      -Borrower
VICE PRESIDENT

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

*[Sign Original Only]*

## PREPAYMENT PENALTY NOTE ADDENDUM

3030052061

For a valuable consideration, receipt of which is hereby acknowledged the undersigned agree that certain Promissory Note of even date to which this Addendum is attached, shall be subject to the following provisions, notwithstanding any provisions to the contrary contained in said promissory note or the Deed of Trust, Mortgage, Real Estate Mortgage, Security Deed (Security Instrument) securing same.

This Addendum is attached to and made a part of that certain Promissory Note given by
**LETITIA ROBERTSON**
**RODERICK ROBERTSON**

(Borrower) to

**MORTGAGE LENDERS NETWORK USA, INC.**
(Lender), dated **December 23, 2005**, which Note is in the principal amount of
$     **192,000.00**

### PREPAYMENT PENALTY

After **Three**            **3**       **full year(s)**    from the date hereof, maker may pre-pay, without penalty, the outstanding principal balance. In the event maker prepays in full the outstanding principal balance and accrued interest during the first **Three**
**3**          **full year(s)** from the date hereof, maker shall pay in addition to such prepayment a penalty in an amount equal to a percentage of the principal portion of the amount so pre-paid in accordance with the following:

```
If paid during the first year from the date hereof, Five percent
(   5.0000  %) of the portion of such prepayment equal to the principal
amount so prepaid.

If paid during the second year from the date hereof, Five percent
(   5.0000  %) of the portion of such prepayment equal to the principal
amount so prepaid.

If paid during the third year from the date hereof, Five percent
(   5.0000  %) of the portion of such prepayment equal to the principal
amount so prepaid.
```

Holder shall apply any prepayment first to reduce any interest and charges owing at the time of such prepayment and then to reduce the amount of principal owed under this Note, provided that such balance shall be applied to the principal in reverse order of the due date of each payment and shall not otherwise affect or delay the due date of the next payment under the Note.

| | | | |
|---|---|---|---|
| _(signature)_ | 12/23/2005 | | 12/23/2005 |
| Borrower | Date | Borrower | Date |
| **LETITIA ROBERTSON** | | | |
| _(signature)_ | 12/23/2005 | | 12/23/2005 |
| Borrower | Date | Borrower | Date |
| **RODERICK ROBERTSON** | | | |

prepypn 4/2/97 rev 7/99 10/99

# ALLONGE TO NOTE

| | |
|---|---|
| **Date of Allonge:** | **1/26/2006** |
| **Loan #:** | **3030052061** |
| **Note Date:** | **12/23/2005** |
| **Loan Amount:** | **$192,000.00** |
| **Property Address:** | **5255 LODESTONE LOOP**<br>**MEMPHIS, TN   38109** |
| **In favor of:** | **Mortgage Lenders Network, USA, Inc.** |
| **And Executed by:** | **LETITIA ROBERTSON**<br>**RODERICK ROBERTSON** |

**Pay to the order of**       RESIDENTIAL FUNDING CORPORATION
**Without recourse:**       _____

By: _____

Name:  Michele Morales
       Manager of Sales and
Acquisitions
       Emax Financial Group, LLC

PAY TO THE ORDER OF
U.S. Bank National Association as Trustee
WITHOUT RECOURSE
Residential Funding Corporation

By _Judy Faber_

Judy Faber, Vice President

Tom Leatherwood, Shelby County Register of Deeds: Instr. # 06014778

3030052061
Return To:
Mail to:
MORTGAGE LENDERS NETWORK USA, INC.
213 COURT ST. MIDDLETOWN, CT 06457

Prepared by and return to:
Equity Title & Escrow Co.
6373 Quail Hollow, Suite 102
Memphis, Tennessee 38120

(901) 374-0089

Prepared By:
Jeffrey A. DeNaso, Esquire
213 COURT STREET, MIDDLETOWN, CT 06457

The Maximum Principal Indebtedness for Tennessee recording tax purposes is $ __192,000.00__ .
—————————————— [Space Above This Line For Recording Data] ——————————————

# DEED OF TRUST

MIN 1002610-3030052061-5

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated **December 23, 2005**
together with all Riders to this document.
(B) "Borrower" is
**LETITIA  ROBERTSON**
**RODERICK ROBERTSON**

Borrower is the trustor under this Security Instrument.
(C) "Lender" is
**MORTGAGE LENDERS NETWORK USA, INC.**
Lender is a **corporation or association**
organized and existing under the laws of **Delaware**

TENNESSEE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS   Form 3043 1/01
-6A(TN) (0005).02

Page 1 of 15          Initials:
VMP MORTGAGE FORMS - (800)521-7291

Tom Leatherwood, Shelby County Register of Deeds: Instr. # 06014778

3030052061

Lender's address is
**213 Court St. Middletown CT 06457**
(D) "Trustee" is **Robert M. Wilson, Esquire**

a resident of **Memphis**                                                              , Tennessee.
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-20216, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated **December 23, 2005**
The Note states that Borrower owes Lender  **One Hundred Ninety-Two Thousand and No/100** ------------------------------------------------------ Dollars
(U.S. $     **192,000.00**     ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   **January 1, 2036**   . The maximum principal indebtedness for Tennessee recording tax purposes is $          **192,000.00**.
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider   ☐ Condominium Rider          ☐ Second Home Rider
☐ Balloon Rider           ☐ Planned Unit Development Rider   ☐ 1-4 Family Rider
☐ VA Rider                ☐ Biweekly Payment Rider     ☐ Other(s) [specify]

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

3030052061

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (a) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (b) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY                                          of SHELBY

    [Type of Recording Jurisdiction]                              [Name of Recording Jurisdiction]

SEE ATTACHED SCHEDULE A

Derivation Clause

The instrument constituting the source of the Borrower's interest in the foregoing described property was a _____ recorded _____
in the Register's Office of _____ County, Tennessee.
Parcel ID Number: _____ which currently has the address of

5255 LODESTONE LOOP                                                    [Street]

MEMPHIS                                      [City] , Tennessee  38109      [Zip Code]

("Property Address"):

TO HAVE AND TO HOLD, the aforedescribed property, together with all the hereditaments and appurtenances thereunto belonging to, or in anywise appertaining, unto the Trustee, its successors in trust and assigns, in fee simple forever. Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

Initials: RR JH

-6A(TN) (0005).02                    Page 3 of 15                    Form 3043  1/01

3030052061

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due

3030052061

for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

3030052061

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the

Tom Leatherwood, Shelby County Register of Deeds: Instr. # 06014778

3030052061

work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there

Tom Leatherwood, Shelby County Register of Deeds: Instr. # 06014778

3030052061

is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

Tom Leatherwood, Shelby County Register of Deeds: Instr. # 06014778

3030052081

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if

Tom Leatherwood, Shelby County Register of Deeds: Instr. # 06014778

3030052061

acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be

Initials: _RR SR_

Tom Leatherwood, Shelby County Register of Deeds: Instr. # 06014778

3030052061

only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

3030052061

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of

3030052061

release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Trustee shall give notice of sale by public advertisement in the county in which the Property is located for the time and in the manner provided by Applicable Law, and Lender or Trustee shall mail a copy of the notice of sale to Borrower in the manner provided in Section 15. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and under the terms designated in the notice of sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant at will of the purchaser and hereby agrees to pay the purchaser the reasonable rental value of the Property after sale.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Waivers.** Borrower waives all right of homestead, equity of redemption, statutory right of redemption and relinquishes all other rights and exemptions of every kind, including, but not limited to, a statutory right to an elective share in the Property.

Tom Leatherwood, Shelby County Register of Deeds: Instr. # 06014778

3030052061

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has executed this Security Instrument.

Witnesses:

_____          _____ (Seal)
                                          LETITIA    ROBERTSON        -Borrower

_____          _____ (Seal)
                                          RODERICK ROBERTSON          -Borrower

_____ (Seal)   _____ (Seal)
-Borrower                                 -Borrower

_____ (Seal)   _____ (Seal)
-Borrower                                 -Borrower

_____ (Seal)   _____ (Seal)
-Borrower                                 -Borrower

Tom Leatherwood, Shelby County Register of Deeds: Instr. # 06014778

3030052061

STATE OF TENNESSEE,                                        County ss:

   On this **23rd**          day of  **December   2005**          , before me personally appeared
**LETITIA    ROBERTSON**
**RODERICK ROBERTSON**

to me known to be the person(s) described in and who executed the foregoing instrument, and who
acknowledged the execution of the same to be his/her/their free act and deed. Witness my hand and official
seal.

My Commission Expires:

Tom Leatherwood, Shelby County Register of Deeds: Instr. # 06014778

Land situated in Shelby County, Tennessee to wit:

Lot 174, Phase 7, Diamond Estates P.D. Subdivision, as shown on plat of record in Plat Book 201,  Page 29, in the Register's Office of Shelby County, Tennessee, to which plat reference is hereby made for a more particular description of said property.

Being the same property conveyed to grantor,  Letitia Robertson and husband, Roderick Robertson,  herein by Warranty Deed of record at Instrument No. 03233380 dated August 29, 2003,  filed November 24, 2003,  in the Register's Office of Shelby County, Tennessee.



# *Tom Leatherwood*
## Shelby County Register

As evidenced by the instrument number shown below, this document

has been recorded as a permanent record in the archives of the

Office of the Shelby County Register.



09/12/2014  10:44:13 AM -0700  ENTERPRISE FAX                               PAGE 3    OF 3

**ASC**
ASSET SOLUTIONS COMPANY

Return Mail Operations
PO Box 10388
Des Moines, IA 50306-0388

EXHIBIT

**B**

February 21, 2007

New Loan Number: 1115023732
Old Loan Number: 3030052061

030002/ AC QA 7F RC

LETITIA ROBERTSON
RODERICK ROBERTSON
5255 LODESTONE LOOP
MEMPHIS, TN 38109-6440

Dear Valued Customer:

On behalf of Mortgage Lenders Network and America's Servicing Company (ASC) we are pleased to inform you that Mortgage Lenders Network will transfer the servicing of your mortgage loan to America's Servicing Company effective March 1, 2007. While the transfer of mortgage servicing is a common industry practice, we understand that it can present questions for customers. Rest assured, this does not affect any terms or conditions of your mortgage, other than those provisions related to the servicing of your mortgage. Please refer to the Notice of Assignment printed on the reverse side of this letter for the Real Estate Settlement Procedures Act (RESPA) information.

Effective March 1, 2007, please direct payments to America's Servicing Company. Attached to this letter is a temporary coupon from ASC. A billing statement will soon be sent to you, which reflects the amount and due date of your monthly payment. Thereafter, a billing statement will be sent to you each month your payment is received. If you wish to make a payment greater than the amount due, please indicate how you wish to have the additional funds applied.

All payments and correspondence regarding your loan should be addressed as indicated below:

| Payments | Correspondence |
|---|---|
| America's Servicing Company | America's Servicing Company |
| P.O. Box 1820 | P.O. Box 10528 |
| Newark, NJ 07101-1820 | Des Moines, Iowa 50306-0328 |

Please include your old loan number, or America's Servicing Company loan number on all inquiries. When you send in a check to make your payment, America's Servicing Company may clear the check electronically. Receipt of your check at the address listed on your payment coupon will authorize us to process your payment as an electronic debit to the checking account on which the check was written. If your mortgage check does not clear and is returned, we may withdraw funds from your account electronically. Normally, if this occurs your check will not be returned to you with your bank statement but you can obtain a copy by other means.

If your mortgage payments are drafted from an account, this service will continue, however, drafts due the first part of the month may be delayed. No draft will occur before its regularly scheduled date. Drafts scheduled the last part of the month will not change. All draft dates will return to the normal drafting schedule the following month. If your mortgage payments are not drafted, this may be a good time to consider the convenience of our Automatic Mortgage Payment (AMP) program and begin deducting your mortgage payments from your checking or savings account. If interested, please read the terms and conditions on the 2nd page of this letter and select the enrollment option that best fits your needs.

If you currently have credit life or other optional insurance, it will not transfer to America's Servicing Company. If your payments are made by a third party, please contact your bill payment service directly to make arrangements to have the payee and remittance address changed.

No later than January 31st of next year, America's Servicing Company will provide you with a statement reflecting the amount of mortgage interest paid by you for the entire year of 2007.

ASC is committed to ensuring a smooth servicing transfer for you and providing you with quality service going forward. If you have any questions regarding this transfer please call ASC Customer Service toll free at (866) 426-5500, Monday through Friday 8:00 a.m. to 6:00 p.m.

Previous Servicer: Mortgage Lenders Network
Toll Free Phone Number: 800-691-0929
Hours of Operation: 8:00 a.m. to 5:00 p.m. EST Monday through Friday

Sincerely,                                                      Sincerely,

Leesa White-Potter                                             Sandra Jacish

Leesa Whitt-Potter                                             Sandra Jacish
Senior Vice President                                          Vice President
Customer Operations                                            Mortgage Lenders Network

---

Return this part with your payment.

**ASC**
ASSET SOLUTIONS COMPANY

Letitia Robertson
Roderick Robertson
5255 Lodestone Loop
Memphis, TN 38109-6440

Loan Number
1115023732

**Payment Coupon**

America's Servicing Company
P.O. Box 1820
Newark NJ 07101-1820

| For Customer Use | |
|---|---|
| Additional Principal | $ _____ |
| Additional Escrow | $ _____ |
| Total Enclosed | $ _____ |

106 1115023732 1 10 20 00000000 00000000 00000000 00000000 5

09/12/2014   10:44AM (GMT-07:00)

**WF 013**

```
Page:  1  Document Name: untitled

PAY4     3732     AS-OF 05/26/15  PAYOFF CALCULATION TOTALS 05/26/15  08:21:12
NAME L  ROBERTSO CONTACT NAME LETITIA ROBERTSON
-------------------------------------------------------------------------------
PRINCIPAL BALANCE          194,972.95    ---------- RATE CHANGES ----------
INTEREST 05/26/15           51,350.54    INT FROM     RATE        AMOUNT
PRO RATA MIP/PMI                  .00    07/01/11  6.75000     51,350.54
ESCROW ADVANCE              22,318.60    05/26/15
ESCROW BALANCE                    .00
SUSPENSE BALANCE                  .00
HUD BALANCE                       .00
REPLACEMENT RESERVE               .00
RESTRICTED ESCROW                 .00
TOTAL-FEES                        .00
ACCUM LATE CHARGES             294.45
ACCUM NSF CHARGES                 .00
OTHER FEES DUE                 125.00
PENALTY INTEREST                  .00
FLAT/OTHER PENALTY FEE            .00    TOTAL INTEREST            51,350.54
CR LIFE/ORIG FEE RBATE            .00    TOTAL TO PAYOFF          270,668.54
RECOVERABLE BALANCE          1,607.00


-------------------------------------------------------------------------------

_____
Date: 05-27-2015 Time: 07:21:20.00
```

EXHIBIT

**C**

```
DLQ1  ████ 3732      ____  Q9   D E L I N Q U E N C Y  OWNR ZZZ 05/26/15   08:20:40
13   CONV. RES.          PER/CLS/OFF  F/BK/FR AGE:  9Y  5M IR:  6.75000 INV: M65
DUE( 46)    86,737.47  DUE 08/01/11(   ) (10/30R) ASSUM:              ACQ:03/01/07
LATE CHRG     294.45  PAYMT    @   1,858.72 P: 5255 LODESTONE LOOP
BAD CK FEES      .00  L/C AMT          67.89   MEMPHIS TN 38109
OTHER FEES    125.00  PAYMT + LC   1,926.61 M:
TOT DUE    87,156.92* PRIN BAL   194,972.95
SUSPENSE        .00  P&I           1,357.70   5255 LODESTONE LOOP
NET DUE    87,156.92  DLQ  1 TIME,PAY 70 DAY   MEMPHIS TN 38109
C/S 117  LETITIA ROBERTSON           U  CELL PHON UNKWN
C/D 02/14 RODERICK ROBERTSON         I  CELL PHONE ACPT  ████████████
 *PHONE NO*                               *MULTI LN*
-IMD:N------------------- * ADDITIONAL MESSAGES * ----------------WU: P ----
-=SPOC=-                         PRESS PF14 FOR MEMOS
LIFE-OF-LOAN: CEASE ALL PHONE CALLS & WRITTEN NOTICES FOR LIFE OF THE LOAN
-COM2--------------------* COMMENTS *---------------------------------------
 DATE  USR              CONTACT RESPONSE REASON RECALL       F/B  REMIND
                                                             ____  MMDD15

030714 9PT <REMOVING LOAN FROM CCRG HOME PRESERVATION FOR APPEA>
           <L CLOSED                                    >
           <LAST VCI: 03/07/14                          >
052715 (DU         DEMAND NOT SENT    NO NOTICE STOP R
052615 (DU <BIP NOT SENT DUE TO FORE STOP = 1           >
```

Date: 05-27-2015 Time: 07:20:47.96



***Send All Notices to Assignee***

RECORDING REQUESTED BY:
WELLS FARGO BANK, N.A.

WHEN RECORDED MAIL TO:
WELLS FARGO BANK, N.A.
DEFAULT ASSIGNMENT
MAC: X9999-018
PO BOX 1629
MINNEAPOLIS, MN 55440-9790

Parcel Identifier No:

**ASSIGNMENT OF MORTGAGE**

MERS ID: 1002610-3030052061-5
MERS Telephone: 1-888-679-6377

Maximum principle indebtedness for Tennessee tax purposes is $0.

For Value Received, the undersigned holder of a Mortgage, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR MORTGAGE LENDERS NETWORK USA, INCORPORATED, ITS SUCCESSORS AND ASSIGNS** (herein "Assignor") whose address is BOX 2026 FLINT MI 48501 1901 E VOORHEES ST STE C. DANVILLE, IL 61834 , does hereby grant, sell, assign, transfer, and convey, unto U.S. BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR RASC 2006-EMX3 (herein "Assignee"), whose address is 60 LIVINGSTON AVENUE , ST. PAUL, MN 55107 , a certain Mortgage dated 12/23/2005 and recorded 01/25/2006 , made and executed by LETITIA ROBERTSON RODERICK ROBERTSON , to and in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR MORTGAGE LENDERS NETWORK USA, INCORPORATED, ITS SUCCESSORS AND ASSIGNS upon the following described property. Such Mortgage having been given to secure payment of $192000.00 which Mortgage is of record in Book, Volume or Liber No. , at Page , as Document No. 06014778 , of the Records of Shelby County, State of TN , together with the note(s) and obligations therein described and the money due and to become due thereon with interest, and all rights accrued or to accrue under such Mortgage.

Legal Description:
TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on 07/16/2012 .
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR MORTGAGE LENDERS NETWORK USA, INCORPORATED, ITS SUCCESSORS AND ASSIGNS

NICHOLAS J. WOLF, Assistant Secretary

STATE OF MN
COUNTY OF Dakota } S.S.

On 07/16/2012 , before me JANET L JONES , Notary Public, personally appeared NICHOLAS J. WOLF , Assistant Secretary personally known to me (or proved to me on the basis of satisfactory evidence), to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument, the person or entity upon behalf of which the person acted, executed the instrument.

Witness my hand and official seal.

JANET L JONES
Commission #: 20349147
My Commission Expires: 01/31/2017

JANET L. JONES
NOTARY PUBLIC-MINNESOTA
My Commission Expires
January 31, 2017

Prepared By:KABAO VANG
2701 WELLS FARGO WAY
MAC X9999-018
MINNEAPOLIS MN 55467-8000

I, NICHOLAS J. WOLF, do hereby make an oath that I am a licensed attorney and/or the custodian of the electronic version of the attached document tendered for registration herewith and that this is a true and correct copy of the original document executed and authenticated according to law.

NICHOLAS J. WOLF, Assistant Secretary

STATE OF MN

COUNTY OF Dakota

Personally appeared before me, JANET L JONES, a notary public for this county and state, NICHOLAS J. WOLF who acknowledges that this certification of an electronic document is true and correct and whose signature I have witnessed.

JANET L JONES

My Commission Expires: **01/31/2017**

JANET L. JONES
NOTARY PUBLIC-MINNESOTA
My Commission Expires
January 31, 2017



# Tom Leatherwood
## Shelby County Register

As evidenced by the instrument number shown below, this document

has been recorded as a permanent record in the archives of the

Office of the Shelby County Register.

### 12078317
**07/16/2012 - 12:29 PM**

| | |
|---|---|
| 2 PGS | |
| LAKECIA GIVENS | 972619 - 12078317 |
| VALUE | 0.00 |
| MORTGAGE TAX | 0.00 |
| TRANSFER TAX | 0.00 |
| RECORDING FEE | 10.00 |
| DP FEE | 2.00 |
| REGISTER'S FEE | 0.00 |
| WALK THRU FEE | 0.00 |
| TOTAL AMOUNT | 12.00 |

## TOM LEATHERWOOD
### REGISTER OF DEEDS SHELBY COUNTY TENNESSEE

**1075 Mullins Station Suite W165 ~ Memphis Tennessee 38134 ~ (901) 379-7500**
http://register.shelby.tn.us

**BERKLEY LAW FIRM PLLC**
*119 South Main Ste 500*
*Memphis, TN 38103*
*Tele: 901-322-8706*
*Fax: 901-881-0316*
*E-mail: attorneyberkley@gmail.com*

EXHIBIT
**E**

July 9, 2014

**Via certified mail and regular**
Timothy Draper
Kristine Blue
Home Preservation Specialist
Wells Fargo Bank, N.A. d/b/a
America's Servicing Company
P. O .Box 10388
Des Moines, Iowa 50306

Officer, Director, Managing Agent
US National Bank, N.A.
800 Nicollet Mall
Minneapolis, MN 55402

Ms. Kristin Camp, Esq.
Wilson & Associates, PLLC
1521 Merrill Drive Ste D220
Little Rock, AR 72211

      RE:  Claimants:  Letitia and Roderick Robertson
      **Loan No:  1115023732**
      **Property Address: 5255 Lodestone Loop**
                  **Memphis, TN 38109**

NOTICE OF RESCISSION

Dear Mr. Draper, Ms. Camp, and US Bank official:

      This letter constitutes our demand for rescission of the promissory note, deed of trust, and a return of all payments of any type of kind tendered to you or US Bank, N.A. or any predecessor servicer pursuant to 15 USC § 1635 and 15 USC § 1641(g)  and state law liability.

Relevant Facts

      On or about December 23, 2005, Claimants executed a Note and Deed of Trust in favor of Mortgage Lenders Network USA, Inc[1] to refinance their residence.   Per Mr.

---

[1] A copy of the deed of trust is attached herewith at Exhibit A.   Exhibit A provides in material part at page 4 that "Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record."

Draper's letter of April 22, 2014, Wells Fargo Bank, N.A. services this mortgage on behalf of RASC 2006-EMX3[2].    This Trust[3] is controlled by a Pooling and Servicing Agreement which provides as follows:

Section 1.01......Definitions.

\*\*\*\*\*\*\*\*

Closing Date: April 21, 2006.

Section 8.02.    Certain Matters Affecting the Trustee.

(a)    Except as otherwise provided in Section 8.01:

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

(b)    Following the issuance of the Certificates (and except as provided for in Section 2.04), the Trustee shall not accept any contribution of assets to the Trust Fund unless (subject to Section 10.01(f)) it shall have obtained or been furnished with an Opinion of Counsel to the effect that such contribution will not (i) cause any REMIC created hereunder to fail to qualify as a REMIC at any time that any Certificates are outstanding or (ii) cause the Trust Fund to be subject to any federal tax as a result of such contribution (including the imposition of any federal tax on "prohibited transactions" imposed under Section 860F(a) of the Code).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Section 10.01.    REMIC Administration

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

(b)    The Closing Date is hereby designated as the "startup day" of each of REMIC I, and REMIC II within the meaning of Section 860G(a)(9) of the Code (the "Startup Date").

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

(m)    Neither the Trustee nor the Master Servicer shall sell, dispose of or substitute for any of the Mortgage Loans (except in connection with (i) the default, imminent default or foreclosure of a Mortgage Loan, including but not limited to, the acquisition or sale of a Mortgaged Property acquired by deed in lieu of foreclosure, (ii)the bankruptcy of the Trust Fund, (iii) the termination of any REMIC pursuant to Article IX of this Agreement

---

[2] This was Claimant's first notice of the identity of the purported Noteholders thus all of Claimants TILA claims are equitably tolled until this date.    *Jones v. TransOhio Sav. Assoc.*, 747 F.2d 1037, 1041 (6th Cir. 1984)

[3] An excerpted copy of the Trust is attached as Exhibit B.    The full instrument is attached as Ex. 10.1 to Sec Form 8-k dated May 3, 2006.

or(iv) a purchase of Mortgage Loans pursuant to Article II or III of this Agreement) or acquire any assets for any REMIC or sell or dispose of any investments in the Custodial Account or the Certificate Account for gain, or accept any contributions to any REMIC after the Closing Date unless it has received an Opinion of Counsel that such sale, disposition, substitution or acquisition will not (a) affect adversely the status of any REMIC created hereunder as a REMIC or (b) unless the Master Servicer has determined in its sole discretion to indemnify the Trust Fund against such tax, cause any REMIC to be subject to a tax on "prohibited transactions" or "contributions" pursuant to the REMIC Provisions.

**********************

Section 11.04.   Governing Law.

This agreement and the Certificates shall be governed by and construed in accordance with the laws of the State of New York, without regard to the conflict of law principles thereof, other than Sections 5-1401 and 5-1402 of the New York General Obligations Law, and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such laws.

By its express terms the Trust establishes a Closing date of April 21, 2006. Section 1.01 Defined Terms.    The Trust provides that the Trustee shall not acquire any assets after the closing date.   Section 8.02(b) and Section 10.01(m). The Trust is governed by New York substantive law.   Section 11.04.

On or about July 16, 2012, Nicolas J. Wolf executed an assignment of Deed of Trust on behalf of Mortgage Electronic Registration System, Inc as nominee for Mortgage Lenders Network USA, Inc., of all of assignor's right, title, and interest to US Bank N.A. as Trustee for RASC 2006-EMX3[4].

At no time has all the information required by 15 USC § 1641(g) and 12 CFR § 226.39 been forwarded to Claimants.

### TILA RESCISSION

§1641(g) became operative on May 20, 2009 and is read *in pari materia* with §1635. *Wheeling Pittsburg Steel Corporation vs. Mitsiu*, 221 F.3d 924 (6th Cir. 2000) Thus, the Claimant's right to rescission became operative again on or about August 15, 2013 due to your failure to comply with 15 USC § 1641(g) and 12 CFR § 226.39[5]. Claimants now exercise their rights to TILA rescission.   Please <u>tender</u> all sums that have been paid whether principal, interest, escrow, points, downpayment or otherwise within the time set by statute or regulation.

### LACK OF STANDING OR AUTHORITY TO FORECLOSE

---

[4] A copy of this instrument is attached herewith as Exhibit C.  This instrument states:  "Such mortgage having been given to secure payment of $192,000.00 which mortgage is of record in Book, Volume, or Liber No. , Page , as Document 06014778, of the Records of Shelby County, State of Tennessee, together with the note and obligations therein described and the money due or to become due with interest, and all rights accrued or to accrue under such Mortgage." (emphasis supplied).

[5] TILA is remedial legislation and liberally construed. *Jones*, 747 F.2d 1040.

. New York EPTL § 7.2-4 provides that:  If the Trust is expressed in an Instrument creating the estate of the trustee, every sale, conveyance, or other act of the Trustee in contravention of the trust except as authorized by this article or any other provision of law is void.  In *Genet v. Hunt*, 21 N.E. 91 (1889), the New York Court of Appeals held that this statute renders every act of a trustee in contravention of the trust "absolutely void".  In similar manner, the California Court of Appeals held in *Glaski v. Bank of America*, N.A., 218 Cal. App. 4th 1079 (2013), post-closing transfers can be the basis of a void assignment pursuant to New York law.  Likewise, in *In Re Richard Meabon*, No 13:13-cv-317-RJC (W.D.N.C. March 28, 2014), the Western District of North Carolina found that actions in violation of a New York trust are void.

Therefore, any attempt to utilize or rely upon the Note or assignment of the Deed of Trust, after the April 21, 2006 closing date (including a notice of foreclosure) are all void as contrary to the express terms of the Trust.

## FRAUDULENT INDUCMENT AND RESCISSION

On information and belief, the Robertsons were fraudulently induced[6] to enter into the December 23, 2005 loan transaction and the promissory note and the deed trust misrepresent the identity of the actual lender.   On information and belief, this was a "table funded" loan within the purview of Regulation Z, and thus these documents embody misrepresentations of a material fact that the Robertsons relied upon in consummating the transaction[7].  This conduct also entitles the Robersonson to rescission[8] of the entire loan and imposition of punitive damages[9] against all involved parties jointly and severally pursuant to Tennessee common law fraud.

## FRAUDULENT CONCEALMENT (NONDISCLOSURE) AND RESCISSION

§ 1641(g) expresses a statutorily mandated duty to disclose the identity of the new lender within 30 days of the assignment of the debt.   Failure  to comply also implicates Tennessee common law fraudulent non-disclosure of material facts[10].

## RESCISSION AND PRE-JUDGMENT INTEREST

An analysis of the HUD-1 settlement sheet and the February 3, 2014 letter to Letitia Robinson indicate that Claimants have paid no less than ONE HUNDRED TWENTY THOUSAND ONE HUNDRED FIFTY ONE AND 21/100 DOLLARS ($120,151.29).   Pursuant to Tenn. Code Ann. §47-14-123, courts may award prejudgment interest on this amount.  *Morrison v. Allen*, 338 S.W.3d 432, n.6 (Tenn.

---

[6] TILA does not preempt claims for deceptive practices, unfair practices, or common law fraud claims. *Peel v. Brooks America Mortg. Corp.*, 788 F.Supp. 2d 1149, 1158-1164 (C.D. Cal. 2011)

[7] The fraudulent inducement rescission claims are tolled until we receive the closing wire transfers to fund the loans to confirm that it was a table funded loan.  Recession claims predicated upon fraud do not expire until at a minimum six (6) years after discovery. *Humphreys v. Bank of America*, N.A., 2014 WL 521169, Slip. Op. at 8 (6th Cir. February 11, 2014)

[8] *Lamb v. Megaflight, Inc.*, 26 S.W.3d 627, 631 (Tenn. App. 2000).

[9] *Gooddale v. Langenberg*, 243 S.W.3d 575, 585-86 (Tenn. App. 2007)

[10] See Note 8, above.  These claims are also tolled until discovery.  See Note 9, above.

2011). Ten percent is an authorized prejudgment interest rate.   *Myint v. AllState Insurance Co.*, 970 S.W.2d 920, 927-929 (Tenn. 1998).

## TENDER OF EQUIVALENT VALUE

Pursuant to 12 CFR § 226.23(d)(3), Claimants hereby tender the title to the property referenced above in satisfaction of their tender obligations.    Claimants stand ready to execute a quitclaim or any other instrument of transfer upon written confirmation within the time limit[11] established by 12 CFR § 226.23 that you intend to complete the rescission and tender the sums paid by Claimants.

## PUNITIVE DAMAGE CALCULATION

In *Goff v. Elmo Greer & Sons Constr. Co.*, 297 S.W.3d 175 (Tenn. 2009), the Tennessee Supreme Court that a jury will award punitive damages of no less than TWO MILLION DOLLARS[12] ($2,000,000.00) for a case of this nature.   Moreover, *Goff* court modified the award to approximately 27 times the compensatory damages, i.e. $500,000.00 in punitive against $18,000.00 in compensatory damages. *Id* at. 186-198.

*Demand*

As a proximate result to the violations of 15 USC § 1641(g) and 12 CFR § 226.39, and fraudulent inducement at the origination, and fraudulent non-disclosure at the assignment by you, Claimants sustained current and future damages in the amount of the sums paid, plus any court awarded attorney fees, pre-judgment interest, post-judgment interest and punitive damages pursuant to Tennessee common law for fraudulent inducement and fraudulent nondisclosure of material facts[13].

In summary, Claimants compensatory damages include the following

| | |
|---|---|
| Rescission | $120,151.29 |
| Pre-judgment Interest | $108,135.09 |
| | $228,286.38 |

Based on the foregoing, Claimants demand the sum of ONE MILLION TWO HUNDRED TWENTY EIGHT THOUSAND TWO HUNDRED EIGHTY SIX AND 36/100 DOLLARS ($1,228,286.38) to compromise and settle their claims and would tender title to the above property within the time limit[14].

---

[11] At the completion of this time limit, Claimants will file a Notice of Rescission with the Shelby County Registrar of Deeds reflecting that the Deed of Trust has been rescinded by operation of the clear terms of 12 CFR § 226.23(d)(1).   This regulation is binding. *Household Credit Services v. Pfenning*, 541 U.S. 232 (2004).
[12] The $500,000.00 punitive damage cap expressed at Tenn. Code Ann. § 29-39-104 has no application to this case.   § 29-39-104 removes the caps when you falsify or conceal material evidence and you ratify or approve this conduct by your agents or employees.
[13] §1641(g) renders all the pertinent information regarding RASC 2006-EMX3 material and also imposes a duty to disclose.
[14] See note 11 above.

Respectfully Submitted,

*Berkley Law Firm PLLC*

Drayton D. Berkley, Esq.

DDB/lb

6

# EXHIBIT 2



EXHIBIT
2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | |
|---|---|
| RODERICK ROBERTSON and<br>LETITIA ROBERTSON,<br><br>    Plaintiffs,<br><br>v.<br><br>US BANK, N.A. AS TRUSTEE FOR RESIDENTIAL<br>ASSETS SECURITIES CORPORATION, HOME<br>EQUITY MORTGAGE ASSET-BACKED PASS<br>THROUGH CERTIFICATES, SERIES 2006-EMX3,<br>WILSON & ASSOCIATES, PLLC, and<br>RESIDENTIAL ASSETS SECURITIES<br>CORPORATION, HOME EQUITY MORTGAGE<br>ASSET-BACKED PASS THROUGH<br>CERTIFICATES, SERIES 2006-EMX3<br><br>    Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    No. 2:14-cv-02677-SHM-cgc |

## RULE 26 INITIAL DISCLOSURES
## SUBMITTED BY U.S. BANK AND THE RASC TRUST

Defendants U.S. Bank, N.A., as trustee for RASC Series 2006-EMX3 Trust ("U.S. Bank"), and the RASC Series 2006-EMX3 Trust ("the RASC Trust") (collectively, "Defendants") provide the following Initial Disclosures pursuant to Federal Rule of Civil Procedure 26(a):

### Preliminary Statement

By identifying persons, documents, records, and other information in these initial disclosures, Defendants do not waive any claim of privilege that might protect such documents, records, or other information. Thus, nothing in these disclosures should be construed as a waiver of the attorney-client privilege, the attorney work-product privilege, or any other privilege that might protect such documents, records, or information from discovery. Further,

the RASC Trust does not waive any of its defenses, including lack of service and/or process, by providing the following Initial Disclosures.

**Disclosures**

**I.     Individuals likely to have discoverable information:**

The following persons are listed as likely to have discoverable information that the disclosing parties may use to support their claims.  Defendants represent only that, based on their information and belief, the persons listed here may have, or may have had in the past, knowledge pertaining to claims and defenses asserted in this matter:

1.     Plaintiffs Roderick and Letitia Robertson– Note, Deed of Trust, allegations in the Complaint

2.     Wells Fargo custodian – mortgage relationship, including payments and default.

3.     Any witness identified in Plaintiffs' disclosures

**II.    Documents used to support defenses:**

The following documents may be used to support Defendants' defenses:

1.     Note and Deed of Trust (and related documents).

2.     Any assignments of the Deed of Trust.

3.     Loan origination file.

4.     Customer service notes.

5.     Payment history.

6.     Correspondence between the parties.

**III.   Computation of damages:**

Not applicable.

2

**IV.**    **Insurance agreement:**

Insurance coverage in this matter will not be triggered and no insurance company has

been notified of this claim.

**V.**    **Experts:**

o be disclosed pursuant to the Rule 16(b) Scheduling Order.

Respectfully submitted,

s/ Kavita G. Shelat
Bradley E. Trammell (#13980)
Kavita G. Shelat (#29388)
Baker, Donelson, Bearman, Caldwell &
Berkowitz, PC
165 Madison Avenue, Suite 2000
Memphis, TN  38103
Telephone: 901-577-8120
Fax: 901-577-0725
btrammell@bakerdonelson.com
kshelat@bakerdonelson.com

*Attorneys for Defendants U.S. Bank, N.A., as*
*trustee for RASC Series 2006-EMX3 Trust,*
*and RASC Series 2006-EMX3 Trust*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served via this
email on October 17, 2014:

| Drayton D. Berkley | Edward Russell |
|---|---|
| 119 South Main, Suite 500 | Wilson & Associates, PLLC |
| Memphis, TN 38103 | Creekside Crossing III |
| | 8 Cadillac Drive, Suite 120 |
| | Brentwood, TN 37027 |

s/ Kavita G. Shelat

3